## JACOB WILSON, *vs.* JOHN D. FARQUHARSON and others.

A testator devised certain real estate, in trust, to be rented out, and the rents and profits annually paid to his manumitted negroes, Daniel, John and Henry, or their "order attested by some justice of the peace," and in case of the decease of either, his share was to be paid by the trustee to his legal representatives and heirs at law, unless the deceased should make some other appointment by last will and testament. He also directed that any receipts given by these *cestui que trusts* for such rents, attested by any justice of the peace, should be good and effectual releases and discharges for the same, and by a codicil revoked the power of sale which he had, upon certain contingencies, given to his trustee. Daniel and John died intestate, leaving Henry their heir at law. HELD:

1st. That Henry had the right to *assign* only the interests of Daniel and John, which devolved upon him absolutely by their death, and the profits of his own share during his life; he can only dispose of his own share *in fee* by last will.

2nd. The sale by Henry of all his interest (estimated at $2800) in this estate for $750, there having been no fraud or imposition, and as doubts might arise as to the value of his rights since the act of 1831 prohibiting manumitted slaves from remaining in the State, and there being proof that the land sold considerably above its value, is not void for inadequacy of price.

Where there is a total absence of fraud or imposition, there is no such thing as an equitable incapacity where there is a legal capacity.

The right of alienation is incident to all property, and can only be restrained by express words to that effect.

APPEAL from the Court of Chancery.

This appeal was taken from a decision of the chancellor dismissing the petition of the appellant, reported in 4 *Md. Ch. Decisions,* 176, where the will of Mr. Harper, which gave rise to the controversy, is fully set out, and where, as well as in the opinion of this court, the other facts of the case are fully stated.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Thos. G. Pratt* and *Alex. Randall* for the appellant.

1st. Farquharson had no right to obtrude himself in the

Wilson *vs.* Farquharson, *et al.*

case, and ask for the protection of the *cestui que trust*. He was clothed with no greater power than was given to Rea, the original trustee under the will. Henry, the negro, was an adult *compos mentis*, and capable of making a contract; all of the witnesses speak of him as such. The *cestui que trusts* filed their bill claiming the land and asking for a sale of it. The land was sold, and with this sale the power of the trustee ceased; he was not the trustee of the fund, the proceeds of the sale.

2nd. Had Henry the power to dispose of his interest in this estate? He was the *cestui que trust* in fee. The legal estate was in the trustee, but the entire beneficial interest was in Henry, and he has, in equity, all the power over the estate that he would have at law if it had been a legal estate. *Jeremy's Eq.*, 23. *Lewin on Trusts*, 498, (24 *Law Lib.*, 252.)

3rd. Is the sale made by him to be avoided on any ground whatever? The chancellor concedes there was no such fraud in the transaction as will avoid the deed. All the witnesses say Wilson is honest, and that Henry was shrewd; that he acknowledged he had sold his interest, and for its full value. Both of the justices before whom the deed was acknowledged, and who took his deposition to his answer, say the instruments were read to him, and that he told them what the deed was. Inadequacy of price is the only ground upon which any objection to the transaction can be based. But then there is great doubt about the title. The devise was to negroes manumitted by will. By the act of 1831, ch. 281, they could not remain in this State; they must go to Liberia. It is not clear but that a devise of a trust under such circumstances is void. *Jeremy's Eq.*, 21. 1 *Md. Ch. Decisions*, 356, *Negro Monica vs. Mitchell*. Besides there is proof that the land sold for more than its value. But we insist he had a fee-simple interest in the land. A devise of rents and profits, even to trustees, is a devise of the lands themselves. *Powell on Devises*, 234, (21 *Law Lib.*, 137.) 1 *Ves., Sen.*, 171, *Johnson vs. Arnold*. Do., 42, *Baines vs. Dixon*. Under this devise then, and under the act of 1825, ch. 119,

we say Henry took a fee in these lands. But the codicil revokes the whole clause relating to the sale. How then can the proceeds of sale be invested? There was no trust except as to rents and profits, and as soon as the land was sold by the chancellor the trust ceased. If this be the case there was a fee-simple interest in the whole fund.

4th. But clearly Henry was entitled to convey that portion of the property which he held as heir at law of Daniel and John, for the will says *the property itself* shall, in case of the death of any of the devisees, be paid over to the *cestui que trusts.* In this Henry had a fee-simple, and it must be conceded it passed to Wilson. At all events, then, the petition of Wilson should not have been dismissed, but he should be credited with the money belonging to Henry as heir at law of Daniel and John, and with his own life interest in the land.

*J. Shaaff Stockett* and *Thos. S. Alexander* for the appellees.

1st. Henry had no right under the will to dispose of this property. The testator designed to give but a limited interest. The codicil revokes the clause which gave the trustee the power to sell. The negroes were the special objects of the testator's bounty. He gave them the lands as a means of support. His intent was that Henry should receive the rents and profits of the estate devised in trust for his benefit as they accrued, and the principal estate to be distributed after his death. Such intention would be defeated by giving effect to the assignment set up by the appellant. 4 *Ves.*, 311, *Thellusson vs. Woodford,* affirmed in 11 *Ves.*, 112. 2 *H. & G.*, 127, *Dashiel vs. Dashiel.* The sale has converted the land into money, and has impressed upon the money the same trusts as were upon the land; it was made in execution of the trusts of the will. The heirs at law of the testator are not here, and no person is here raising the question of the validity of the devise. Negroes, both in and out of the State, could, prior to the act of 1831, acquire real estate in Maryland, since that act a negro who is permitted to remain here by the orphans court may also acquire property. But this land has

been converted into money, and there is no law prohibiting such a trust as this for the benefit of manumitted negroes.

2nd. The assignment was obtained by fraud. It is proved Henry was a negro and could not read. It is not shown that the deed was read to him. He had married a slave woman belonging to Wilson, and the testator designed the latter should have no benefit under the will. The disparity between the consideration expressed upon the face of the deed, and the value of the interest supposed to have been purchased, is so gross as to shock the moral sense, and of that consideration an inconsiderable part only has been paid. On these facts alone, in the absence of all evidence of fraud, equity would refuse to give effect to the transaction as *unconscionable.* 1 *Cox,* 332. 1 *Bland,* 391, *Owings' case.*

3rd. The appellee is the proper party to receive the proceeds of sale, and invest the same for the benefit of the *cestui que trusts.* Besides the appeal is taken only from so much of the order of the chancellor as dismisses the petition of Wilson.

Le Grand, C. J., delivered the opinion of this court.

This is an appeal from the court of chancery. It appears from the record that William S. Harper, by his last will, manumitted his negroes, and devised to William Rea certain real estate in trust for their benefit. In particular he devised certain real estate to the said Rea, in trust to be rented out, and the issues and profits thereof to be paid over to Henry Robinson, one of his negroes, "annually, or his order, attested by some justice of the peace." Rea assumed the trust and discharged the functions thereof for some time, when, having declined to act any longer, the appellee, Farquharson, was, by order of the court of chancery, substituted in his place. On the 6th May 1850, a bill was filed on the part of some of the devisees against the others and the trustee, representing that the real estate so devised in trust for their benefit was deteriorating in value, and praying a sale as greatly to the interest and advantage of all parties concerned. Upon the coming in of the answers and proof a sale was decreed, which

18    v.5

was made and finally ratified on the 5th November 1851. After the order of ratification *nisi*, the appellant, by his petition filed on the 30th July 1851, stated that he was one of the purchasers, and claimed, by virtue of a deed and assignment from Henry Robinson, one of the devisees under the will, the proportion of the proceeds of the sale to which Robinson was entitled. The deed is dated the 25th June 1850, and purports for the consideration of $750, to convey to the appellant all the interest of the grantor in the real estate of Harper devised under the will. The appellant asked that the proportion of the proceeds of the sale to which he claimed to be entitled, by virtue of the transfer from Robinson to him, might be credited to him and deducted from his purchase. Robinson, by his answer, admitted the allegations of the petition and consented to its prayer. Farquharson, however, filed his petition, in which he declares if the sale set up in the petition of the appellant was made, that the consideration was grossly inadequate, and the deed extorted from Robinson by fraudulent practices, and prayed that the appellant might answer his petition, and the deed be set aside, and the proceeds of sale paid to the petitioner as trustee, to be invested and applied to the use of the parties. This petition was answered by the appellant, and, in his answer, he denies all fraud, &c. The chancellor dismissed the petition of the appellant, and retained that of Farquharson for further order.

We concur in opinion with the chancellor, there is no evidence to show that the appellant practiced any fraud upon Henry Robinson. The instrument of assignment appears to have been executed with all due formality, and the assignor professes a willingness to abide by it, as is fully evidenced by his answer. This being so, the only two questions remaining to be considered are:—1st. Is there evidence of such gross inadequacy of price as to shock the conscience; and 2nd. Had Robinson the power to make the disposition which he did.

1st. As to the inadequacy of Price. The interest of Robinson is estimated to amount to about $2800. The price agreed to be paid by the appellant is $750. There is certainly

great disparity in the sums, but this circumstance alone will not be sufficient to set aside the deed. The peculiar nature of the interests which were devised to the negroes of Harper, and the state of our law in regard to that class of our population, especially since the passage of the act of 1831, which prohibits manumitted slaves from remaining in Maryland, may very well have suggested doubts in the minds of persons as to the value of the rights of Robinson, and have cast upon them shadows and uncertainties. Besides, there is evidence in the record going to show that the land sold at a price considerably above its value. Taking these circumstances, together with the possibility of the transaction leading to a suit, we do not perceive that the sum agreed to be paid by the appellant was so grossly inadequate, "that it would be impossible to state it to a man of common sense without an exclamation at its inequality." Robinson is shown by all the proof to be a person of ordinary understanding, and as possessing an intelligence quite equal to the general run of colored persons, and fully competent to the transaction of business; capable of making contracts binding in law, and there is "no such thing as an equitable incapacity where there is a legal capacity. This is undoubtedly the safest doctrine where there is a total absence of fraud and imposition," (6 *H. & J.*, 444,) which is the case now before us. Moreover, the disparity in the value of the rights assigned by Robinson and the amount agreed to be paid for them, is considerably lessened, according to the view we have of the interests which he had the right to assign, and which, therefore, must be taken as the interests he did actually assign.

According to our view, he had only the right to *assign* the interest of the devisees, John and Daniel, which devolved absolutely on him by their death, and the profits arising from his share of the devise during his life. He could only dispose of his own share in fee by last will.

It is apparent from the will of Mr. Harper that he intended his manumitted slaves should enjoy, in the proportions indicated by himself, the profits of the estate devised for their

benefit. This is apparent, not only from that portion of the will which provides for the receipt to be given by each of his devisees, but also from the codicil which expresses his wish that his property should not be sold. But, notwithstanding this, we are of opinion that Robinson had the right to dispose of his *life estate* in the share of the realty devised to him. The right of alienation is an incident to all property, and can only be restrained by express words to that effect, and there are none such in the will of Mr. Harper, so far as the yearly income is concerned. In the case of *Acton and others, vs. White and another,* 1 *Simons & Stewart,* 429, it was held that the wife had power to alienate her life estate. In that case the devise was to trustees, in trust to pay the rents, as the same should become due and payable, into the hands of the wife of the testator, and not otherwise, for her life, for her separate use; and directed *that the receipt of his wife alone for what should be actually paid into her own proper hands, should be good discharges to his trustees.* It was a case quite as strong as the one now before us, and is very similar to it in the particularity of its requisition in regard to the receipt of the profits.

The result of our opinion is this, the appellant is entitled to be credited on his purchase to the amount of the interest of John and Daniel, which by their death devolved on Robinson under the will of Harper, and to the interest during the life of Robinson on the share devised to him. To effect this the value of Robinson's share must be invested in some safe fund, and the interest thereof paid to Wilson during the life of Robinson, and after his death to go according to the trusts of the will of Mr. Harper.

That this may be done, the case will be sent to the circuit court of Dorchester county, as a court of equity, under act of 1854, chapter 183.

*Order of chancellor reversed and cause sent to*
*Dorchester county circuit court, as a court*
*of equity, under act of 1854, chapter 183.*