(*Decided* June 2nd, 1858.)

## Joseph Brown and others' Lessee, *vs.* Rebecca Brown.

A testator, by *apt words*, devises a tract of land *in fee*, then "*leaves*" all his personal estate, except negroes, to be disposed of *by his executor*, and the *residue of his real estate* "*to be rented out yearly*," directs his house to be repaired *by his executor* "from the *income* of his real and personal estate," manumits his negroes, Beckey and Elizabeth Ellen, and directs others to be hired out for a term of years, and then set free, and then "*leaves* Beckey and her children a reasonable support, to be given *by his executor* from the *income* of his real and personal estate, during her life, and at her death" he gives "to Elizabeth Ellen *all the income* of his whole estate, *real* and personal, *to her and her heirs forever*," to be *paid over yearly by his executor*, but if there should be any among them not able to take care of themselves, they are to have a support." He then appoints his executor, and gives him a legacy of $100 "and *ten per cent.* on all money received *by him and his heirs forever.*" Held:

That under this will, the *legal title* to the residue of the testator's real estate passed to the *executor*, who took therein a *trust by implication* for the benefit of the manumitted negroes, and such a devise does not contravene the *policy* of the laws of this State, in regard to free negroes.

Appeal from the Circuit Court for Saint Mary's county.

*Ejectment* brought on the 24th of July 1852, by the appellants, heirs at law of Clement Brown, deceased, against the appellee, for the recovery of certain real estate, of which said Brown died seized. Plea, *non cul.*

*Exception.* The case was submitted to the court below upon a statement of facts, in which it was agreed that the land in controversy, called "*Maiden Bower*," containing about one hundred acres, belonged to Clement Brown, who died in 1836, leaving a duly executed will, dated the 12th of December 1835, (a copy of which is filed as part of the statement,) and the plaintiffs, his heirs at law; that this land is all the real estate owned by him, except the tract called lot No. 1, devised to John Francis Brown and Jane Rebecca Brown; that negro Beckey and her children, and Elizabeth Ellen, are free negroes, left free under his will, and afterwards declared free by a court of competent jurisdiction, and are all now living. The only question to be decided is, whether, under this will, the land in controversy passed to any devisee mentioned therein, or whether it was undisposed of thereby, and passed to the heirs at law? All errors of pleading are waived, and it is agreed that a *pro forma* judgment may be entered, either party having the right to appeal.

The will, which was admitted to probate on the 27th of September 1836, contains the following provisions:

"I give, devise and bequeath unto John Francis Brown and Jane Rebecca Brown, the tract of land on which their mother now lives, called lot No. 1, a part of the Church Swamp, to them and their heirs forever."

"*Item.*—I give and bequeath unto John Williams one pine canoe and two pair of oyster rakes, to him and his heirs forever."

"*Item.*—I leave all my personal estate to be disposed of by my executor, hereinafter mentioned, except negroes."

"*Item.*—I leave the plantation on which I now live to be rented out yearly."

"*Item.*—I leave one negro girl, Ellen, to be hired out for ten years, one negro boy, Thomas, to be hired out for ten years, and one other negro girl, Nancy, to be hired out for fourteen years, by my executor, hereinafter mentioned, and then set free, under the protection and care of my executor."

"*Item.*—I leave my negro woman Beckey, Elizabeth Ellen and James Henry, free, them and their heirs forever,

under the protection and care of my executor, hereinafter mentioned."

"*Item.*—1 placed $700 in the hands of Thompson D. Hayden, to purchase a negro man for me. Should it be so, he is to be hired out for seven years, and then set free, by my executor, hereinafter mentioned, under his protection and care. I leave my house to be repaired by my executor, from the income of my real and personal estate."

"*Item.*—I leave my negro woman Beckey and her children a reasonable support, to be given by my executor, hereinafter mentioned, from the income of my real and personal estate, as long as she shall live; at her death, I give to Elizabeth Ellen all the income of my whole estate, real and personal, to her and her heirs forever, to be paid over yearly by my executor, hereinafter mentioned, except there should be any one among them not able to support themselves, then they must have a support. I also leave Elizabeth Ellen one bed and bedstead, one pair of sheets, two pillows and bolsters, two counterpaines, to her and her heirs forever, to be paid over by my executor, hereinafter mentioned."

"*Item.*—I give to Charles Hayden, of Bartholomew, the sum of $100, and ten per cent. on all money received by him and his heirs forever. And lastly, I do hereby constitute and appoint Charles Hayden, of Bartholomew, sole executor of this my last will and testament."

Upon this statement of facts, the court (CRAIN, J.,) gave judgment for the defendant, and the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*John M. S. Causin* and *Alex. Randall* for the appellants, insisted, that by no sufficient terms in this will, has the real estate in controversy been devised, and that it necessarily descends to the heirs at law.

1st. It is a general rule, that the heir at law is not to be disinherited, except by express words, or necessary implication. 1 *H. & J.*, 417, *Berry's Lessee vs. Berry.* 7 *G. & J.*, 248,

v. 12.

*Creswell vs. Lawson.* An *intention* to disinherit, not carried out in a legal mode, will not work such purpose. *3 H. &* *McH.*, 333, *Lingan vs. Carroll.*

2nd. The executor, under this will, took no legal interest in fee in the estate, but a mere power to collect and apply the income. He has no power of *sale*, nor is there any devise to him *in trust* to sell, nor any *trust* whatever created in him; he has simply the naked power to collect and apply the income. A devise of the *profits* of the land does not *ex vi termini* pass the land, but only affords *evidence* that it was the *intention* of the testator that it should pass. But, in this case, by construing the devise of the *income* as passing the estate, the effect would be to vest the estate absolutely in the manumitted negroes, which would *frustrate* the very object which the testator had in view, viz: the support and maintenance of these negroes and their children, *under the care* of the executor. See 4 *G. & J.*, 323, *Magruder vs. Peter.* 6 *G. & J.*, 423, *Guyer vs. Maynard.* 1 *G. & J.*, 503, *Warfield vs. Gambrill.* 2 *H. & J.*, 369, *Keys vs. Goldsborough.* 12 *G. & J.*, 84, *Hatton vs. Weems.* 9 *Gill*, 438, *Chelton vs. Henderson.* 8 *G. & J.*, 436, *Hammond vs. Hammond.* 3 *Md. Ch. Dec.*, 42, *Boyle vs. Parker.* 4 *Md. Rep.*, 1, *Cassilly & Wife, vs. Meyer, et al.* 2 *Jarman on Wills*, 533, 534, 536 to 539. 1 *Wms. on Excrs.*, 549, 550, note. 6 *Johns.*, 73, *Jackson vs. Jansen.* 1 *Peere Wms.*, 418, *Trafford vs. Ashton,* and *note.* 1 *Atk.*, 506, *Green vs. Belchier.*

3rd. That the evident purpose of the testator was to provide for the manumitted negroes a *permanent residence* in Maryland, and this purpose is inconsistent with the policy of our laws on this subject, and the devises contemplating such an end, are, therefore, *void* in law. The court cannot modify the will any more than it can a deed, when attacked for fraud, (*2 H. & G.*, 34, *Lowry vs. Tiernan,*) and if the *intent* is to violate the law, the will is *void.* By the act of 1831, ch. 281, it was the declared policy of the Legislature, that negroes thereafter manumitted, should not become residents of the State, and should not remain in it in a condition of freedom. This *policy* of the law the courts must carry out, and where a

will attempts to *evade* it, they must decide that such a will is *void*. 1 *Md. Ch. Dec.*, 355, *Monica vs. Mitchell*. 5 *Md. Rep.*, 134, *Wilson vs. Farquharson*. Again, is is obvious, from the words of the devise in favor of Elizabeth Ellen and *her heirs forever*, that his intention was to create a perpetual and inalienable charge upon the land, which will not be sustained in law. 4 *Kent*, 274.

No counsel appeared for the appellee.

Tuck, J., delivered the opinion of this court.

This is an appeal from a judgment of the Circuit Court for St. Mary's county, rendered upon a case stated, wherein the appellants sued the appellee, to recover certain land mentioned in the will of Clement Brown. The plaintiffs claimed as heirs at law of the deceased, and the defence was that this land had been effectively devised by the will, and "the only question was, whether, under said will, the land in controversy passed to any devisee mentioned in said will, or whether the said land was undisposed of by said will, and passed to the heirs at law of said Clement Brown?"

That the testator intended that certain of his negroes, whom he manumitted by the will, should enjoy this land, cannot be questioned; and we think it is equally plain that he did not intend they should have it by a devise of the legal title; because, apart from the language employed in reference to this portion of his estate, by a previous clause he had devised another lot to others, in terms indicating that he knew how to create an estate in fee-simple. A like circumstance was relied on by the court in the cases of *Dougherty vs. Monett*, 5 *G. & J.*, 459, and *Mitchell vs. Mitchell*, 2 *Gill*, 230, in ascertaining the testator's intent in regard to particular clauses of wills.

It is well settled that trusts may arise by implication, and that where a trust is created by will, or duties imposed on executors, and no express devise to them for the purposes of the trust, the legal estate may vest in them by intendment of law, to enable them to discharge such duties; because, otherwise, the testator's intent might fail altogether. *Lewin on*

*Trustees*, 234, (24 *Law Lib.*) 1 *Powel on Dev.*, 220, (21 *Law Lib.*) 2 *Story's Eq.*, secs. 1058, &c. *Hill on Trustees*, and notes, *Part* 2, *ch.* 1, 2. And there are cases in which an estate has been supplied, where none in terms passed, to enable the executor to perform duties imposed by the will. Of this kind was *Bush vs. Allen*, 5 *Mod.*, 63, where a testator devised to a *feme covert* the issues and profits of land, to be paid by his executors, and the question was, whether it was a devise to her, for life, of the land, or that the executors should receive the profits to her use? Ch. J. Holt was of opinion that the legal import of the words—that is, giving her the rents and profits—was equivalent to a devise of the land for life; but the other judges decided that the executors took an estate by implication, for the use of the *feme covert*, although there was no devise to them. The same will came before the court in *South vs. Allen*, 5 *Mod.*, 98 and 102, where the point appears to have been fully argued at the bar, and the same construction was adopted. And, although the chief justice dissented, as in the other case, he said that the intent of the testator would be better fulfilled if the words should be construed to give an interest to the executor, but he thought such a construction would have the effect of making a devise by implication contravene the express words of the will. There was no pretence that the heirs at law had any title; the contest was between the legatee of the rents and profits, who claimed the land, and the executor claiming title, by implication, as trustee for her benefit, in an ejectment which might have been defeated on the ground of the outstanding title of the heirs, if they had had any, but no such point was made. We find these cases referred to, in support of the doctrine that the title may pass by implication, in 1 *Powel on Dev.*, 220; *Lewin on Trustees*, 235; *Hill on Trustees*, 232, 234, 407; *Fletcher on Trustees*, 4, (10 *Law Lib.*) But in 1 *Eq. Ca. Abr.*, 383, *pl.* 2, the case of *South vs. Allen*, as reported in 1 *Salk.*, 228, is cited to show that the title was declared to be in the *feme covert*, and not in the executors. This report reverses the position assigned to the judges in 5 *Mod.*, 63, 102, and is there said to be a mistake. We suppose the report in 5 *Mod.* to be correct, because the decision was

made on the authority of *Griffith vs. Smith, Moore*, 753, which we find to have been in accordance with the opinion ascribed to the associate justices. This discrepancy is alluded to, not as affecting the present case, because, according to either report, the heirs at law would be excluded.

The same principle was applied in the case of *Oates vs. Cooke*, 3 *Burr.*, 1684, which was between one of the heirs at law and the executor named in the will. The will did not contain a devise to the executor, but there were sums given to different persons, annually, with the direction that "these legacies be faithfully paid by my trustee, John Cooke, every year and yearly, one month after Martinmas." The testator left to his trustee and executor, out of the yearly rents of the farm, one pound ten shillings a year and yearly, for repairs and other uses of the farm. There were other clauses in the will, and Cooke was named sole executor and trustee, he paying all the debts, legacies, and funeral charges. The question was, whether any estate, and what, passed to Cooke? Lord Mansfield said, he had no doubt that the intention was clear that the testator meant to devise his real estate in trust, and the other judges concurred, Mr. Justice Wilmot observing, that the intention must be collected from all the parts of the will; that if it was necessary to imply a legal estate in the executor, it was the same as if expressed; and that there were trusts to be executed which the trustee could not effectuate, without having an estate in fee.

In *Anthony vs. Rees*, 2 *Cromp. & Jervis*, 75, a testator gave his freehold estate to his granddaughter, and to his wife the sum of twenty pounds, yearly, as long as she lived, to be paid out of the freehold estate, and a leasehold estate, by trustees thereafter named; it was held, that the trustees had the legal estate, that they might perform the duties imposed upon them. And the same doctrine was announced in *Beezeley vs. Woodhouse*, 4 *Term Rep.*, 89, where a testator directed moneys to be paid *by his executor*, out of his whole estate. The doubt was, whether the words included real property; but that being so decided, an estate was implied in the executors.

The reported cases show many instances of trusts by implication, where none was declared, and of titles by implication in trustees, where there was no express devise of the estate. It is immaterial whether there is, or not, a direct devise to trustees, if the intention that they shall take the estate, can be collected from the whole will. 2 *Jarman on Wills*, 202, (*Perkins' Ed.*, 148,) who cites the case of *Doe vs. Homfray*, 6 *Adol. & Ellis*, 206, (33 *Eng. C. L. Rep.*, 55,) in which Ld. Ch. J. Denman, and the other judges, decided, that a devise to the intent that certain persons should receive rents and profits, and pay them to another, vested the estate in them as trustees. See, also, *Brewster vs. Striker*, 2 *Comstock*, 19. *Doe vs. Gillard*, 5 *Barn. & Ald.*, 785. The question, in such cases, generally has been, not whether the heirs at law were entitled, but, whether the estate passed to the trustees, or was executed under the statute in the person designed to be benefitted by the testator.

Upon considering this will in all its parts, we are of opinion that the testator intended that his executor should hold this land, as well as the personal property not otherwise disposed of, for the benefit of the negroes mentioned in that connection, of whom this appellee was one. The will manumits his negroes; some immediately, and others at different periods after his death; they, in the meantime, to be hired out by the executor. It directs his farm to be rented out yearly, and provides how the income from his real and personal estate shall be applied. The house is to be repaired, by the executor, from this income; and to Beckey and her children he leaves a reasonable support, to be given, by the executor, from this income, as long as she may live; at her death, all the income of the real and personal estate to be paid yearly to Elizabeth Ellen, subject to the support of the infirm; and to the executor he gives ten per cent. on all money received by him and his heirs forever. It is manifest that the testator expected these hires and rents to come into the executor's hands, and, after deducting this ten per cent., to be applied by him to the purposes of the will. He cannot pay as directed, unless he receives, and he must have an estate that will enable him to

rent the land, hire the negroes, and compel payment by those with whom he may contract. This is the inevitable inference from the whole will, and is fully supported by the cases to which we have referred. They are so much alike in material respects, that they may be considered quite in point.

The argument, on the part of the appellants, on the authority of *Negro Monica vs. Mitchell,* 1 *Md. Ch. Dec.,* 357, does not apply here, even conceding the correctness of that decision, as to the act of 1831, ch. 281; for this will, instead of providing that the negroes shall live on the land, directs it to be rented out, and does not contravene the policy of our laws in regard to that population, as the chancellor interpreted the will then before him. But we are not prepared to say— nor did the chancellor—that a master cannot leave land to negroes whom he may manumit by his will. Indeed, we think such a devise may promote the policy of the State, by enabling negroes to provide the means of removing to Liberia, or elsewhere, beyond the State, when required to do so, as they may be, by the officers of the law, on the contingencies mentioned in the act of Assembly; at the same time, that such devises may have the effect of dispensing with the requirement of the law, in the event of their becoming unable to support themselves. *Tongue vs. Negro Crissy,* 7 *Md. Rep.,* 453. It is certain that their being devisees of real estate, will not give them any rights not enjoyed by others, but as long as they are allowed to remain in the State, why may they not have land of their own? If set free without any such devise in their favor, they might hold land acquired in any other way, and if they remove, the title to the land would remain in them.

But, since the case of *Monica vs. Mitchell,* the chancellor and this court have recognized a trust of this description by giving effect to a will in which land was devised to trustees for the purpose of being rented out, and the proceeds applied for the use of negroes manumitted by the will. If, as we think, this will created a trust by implication for like purposes, its provisions no more infringed the policy of the law than did that of the testator in the cases of *Robinson vs. Robinson,* 4

*Md. Ch. Dec.,* 176, and *Wilson vs. Farquharson,* 5 *Md. Rep.,* 134.

Upon a careful examination of the will before us, and of many adjudged cases bearing upon the points urged in argument on the part of the appellants, we are of opinion that the case was properly decided below, and affirm the judgment.

*Judgment affirmed.*